UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| JOHN DANIEL CHALLENDER,<br><br>              Plaintiff,<br><br><br>     vs.<br><br>JASON PARMENTER, Police Officer with Rapid City Police Department, in his individual and official capacity; RACHEL CURRY, Police Officer with Rapid City Police Department, in her individual and official capacity; DON HEDRICK, Police Chief with Rapid City Police Department, in his individual and official capacity; CITY OF RAPID CITY, Respondeat Superior at Rapid City Police Department, in its individual and official capacity,<br><br>              Defendants. | 5:22-CV-05040-KES<br><br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND 1915A SCREENING FOR DISMISSAL |

Plaintiff, John Daniel Challender, an inmate at the Pennington County Jail,[1] filed a pro se civil rights lawsuit under 42 U.S.C. § 1983. Docket 1. Challender moves for leave to proceed in forma pauperis and has included a prisoner trust account report. Dockets 2, 3. Challender also moves for appointment of counsel. Docket 5.

---

[1] Challender does not provide facts regarding the reason he is detained at the Pennington County Jail other than the facts alleged in his complaint, nor does he provide his expected release date. *See* Docket 1. The court will treat him as a pretrial detainee because he was incarcerated at a county jail when he filed the present action. *See id.* at 1.

## I.    Motion for Leave to Proceed in Forma Pauperis

Challender reports average monthly deposits of $0 and an average monthly balance of $0. Docket 3 at 1. Under the Prison Litigation Reform Act, a prisoner who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). "[W]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceeding or over a period of time under an installment plan." *Henderson v. Norris*, 129 F.3d 481, 483 (8th Cir. 1997) (quoting *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997)).

The initial partial filing fee that accompanies an installment plan is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of

> (A) the average monthly deposits to the prisoner's account; or
> (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

Based on the information regarding Challender's prisoner trust account, the court grants Challender leave to proceed in forma pauperis and waives the initial partial filing fee. *See* 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.").

In order to pay his filing fee, Challender must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute places the burden on the

prisoner's institution to collect the additional monthly payments and forward them to the court as follows:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b)(2). The installments will be collected pursuant to this procedure. The Clerk of Court will send a copy of this order to the appropriate financial official at Challender's institution. Challender remains responsible for the entire filing fee, as long as he is a prisoner. *See In re Tyler*, 110 F.3d 528, 529-30 (8th Cir. 1997).

## II.    1915A Screening

### A.    Factual Background

The facts alleged in Challender's complaint[2] are: that on January 2, 2022, Officer Jason Parmenter and Officer Rachel Curry used excessive force in arresting Challender following the stop of a vehicle in which Challender was a passenger. Docket 1 at 2, 6-7. Challender claims that he was in a red Jeep Cherokee alongside Amanda Hoftiernan, the driver of the vehicle. *Id.* at 6. He claims that Parmenter pulled the Jeep over for an expired paper registration.

---

[2] In his complaint, Challender does not provide his own account of the events leading up to his arrest and only instructs this court to "see the Police Report, a copy of which is incorporated herein." Docket 1 at 5. Challender also asks this court to consider Officer Jason Parmenter's body camera footage which was used as evidence in his state court criminal proceedings, but Challender has not provided this court with that footage. *See id.* Thus, this court will treat the contents of the police report as Challender's allegations, supplemented by the limited facts he does provide.

*Id.* Challender alleges that he identified himself as "John Hague" to Parmenter and informed him that he was 26 years old. *Id.* He alleges that Parmenter attempted to verify this information and found a John Hague with an active Pennington County arrest warrant and a birth date of February 5, 1963, but was otherwise unable to verify Challender's identity. *Id.* He also alleges that Parmenter called for another officer to respond and that Curry then arrived. *Id.* Challender states that Hoftiernan told Parmenter that Challender was from out of state. *Id.* He states that he and Hoftiernan then became argumentative. *Id.* He also states that he finally provided Challender with a birth date of August 7, 1995. *Id.*

Challender alleges that Parmenter could not locate a John Hague with that birthdate and that this provided Parmenter probable cause to arrest him for false impersonation to deceive law enforcement. *Id.* He alleges that Parmenter told him to exit the vehicle, but he told Parmenter that he only used the front driver's side door. *Id.* at 6-7. He also alleges that Parmenter twice told Hoftiernan to turn the vehicle off, but Hoftiernan refused to do so. *Id.* at 7. Challender states that Parmenter gave lawful orders to Hoftiernan several times and that she was argumentative. *Id.* He states that Parmenter opened the front driver's side door and ordered Hoftiernan to exit the vehicle, but she refused. *Id.* Challender claims that Parmenter then grabbed Hoftiernan's left wrist, secured her arm, and ordered her out of the vehicle, but she still remained seated. *Id.* Challender claims that he then moved into the driver's seat of the vehicle, forcing Parmenter to shove Hoftiernan out of the way to stop him from

4

driving away. *Id.* He also claims that he began driving at a high rate of speed despite Parmenter's orders for him to stop, resulting in Parmenter being dragged an unknown distance. *Id.*

Challender states that Parmenter then tased him, causing him to run over a curb, at which point Parmenter fell from the vehicle and the Jeep's driver's side rear tires ran over his shins. *Id.* Challender states that Parmenter was able to stand up and that Challender then attempted to run over Parmenter, who evaded the Jeep and tased him again. *Id.* He also states that Parmenter and Curry then began to chase the Jeep, which was slowly rolling through the O'Reilly Auto Parts parking lot. *Id.* Challender claims that Parmenter tased him again while attempting to gain control of the Jeep, but Challender was able to accelerate again. *Id.* Challender's complaint does not include the third and final page of Parmenter's police report. *See id.* at 7-8.

Challender claims that at some point during the encounter, Parmenter said, "I'm [F*****g] tired of this guy." *Id.* at 5. He claims that Parmenter tased him as many as nine times in his left ribcage, left arm, and the left side of his face, although he does not describe the circumstances of any taser use other than that which was described in the first two pages of Parmenter's police report. *See id.* at 5-7. He claims that when he was on the ground with his hands cuffed behind his back, he was told not to move, even though he "could not breathe with ease[.]" *Id.* at 5. He also claims that a nearby civilian witness told surrounding officers that he could not breathe. *Id.*

5

Challender brings claims for violation of his Fourth Amendment right to be free from unreasonable search and seizure, his Eighth Amendment right to be free from cruel and unusual punishment, and his Fourteenth Amendment rights to due process and equal protection of the laws. *See id.* at 4-5, 8-9. He also brings a claim for vindictive prosecution. *Id.* at 5, 9. Challender sues all individual defendants in their individual and official capacities, but he does not specify which claims he brings against which defendants except that he brings an excessive force claim against Parmenter and Curry and a vindictive prosecution claim against Parmenter alone. *See id.* at 2, 4-5, 8-9. Challender seeks injunctive relief, although he does not specify what injunctive relief he seeks. *See id.* at 10. He also asks this court for "any attorney fees and court costs" as well as $500,000. *Id.*

## B.   Legal Background

The court must assume as true all facts well pleaded in the complaint. *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of

a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). If it does not contain these bare essentials, dismissal is appropriate. *See Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985). *Twombly* requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true[.]" *Twombly*, 550 U.S. at 555 (internal citation omitted); *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a "complaint must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory"). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). The court will now assess each individual claim under 28 U.S.C. § 1915A.

 **C.** **Legal Analysis**

  **1.** **Claims Against the City of Rapid City**

 Challender brings claims against the City of Rapid City. Docket 1 at 2. "[N]either municipalities nor government officials may be held liable for unconstitutional conduct under a theory of respondeat superior." *Rogers v. King*, 885 F.3d 1118, 1122 (8th Cir. 2018) (citations omitted). Thus, "a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the violation. That is, the entity's official 'policy or

custom' must have 'caused' the constitutional violation . . . ." *Clay v. Conlee*, 815 F.2d 1164, 1170 (8th Cir. 1987); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

To establish governmental liability premised on an unofficial custom rather than an official policy, a plaintiff must allege facts to support a finding of "a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees" and "deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct[.]" *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018) (quoting *Corwin v. City of Independence*, 829 F.3d 695, 700 (8th Cir. 2016)). A § 1983 complaint does not need to "specifically plead the existence of an unconstitutional policy or custom to survive a motion to dismiss." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (citing *Doe ex rel. Doe v. Sch. Dist.*, 340 F.3d 605, 614 (8th Cir. 2003)). But the complaint must still include some allegation, reference, or language that creates an inference that the conduct resulted from an unconstitutional policy or custom. *Id.*; *see also Doe*, 340 F.3d at 614 ("At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom.").

Here, Challender alleges that Parmenter and Curry used excessive force when they arrested him and that Parmenter engaged in vindictive prosecution in violation of his constitutional rights. Docket 1 at 2, 4-5, 8-9. But Challender makes no claims that this alleged constitutional injury was caused by a City of Rapid City policy or custom. *See id.* at 4-9. Thus, his claims against the City of Rapid City are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

### 2.   Official Capacity Claims for Money Damages

Challender brings claims against Hedrick, Parmenter, and Curry in their official capacities. Docket 1 at 2. "A suit against a government officer in his [or her] official capacity is functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Challender's official capacity claims against Hedrick, Parmenter, and Curry are equivalent to claims against the City of Rapid City.

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694. As above, a municipal government may be sued only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," deprives a plaintiff of a federal right. *Id.* Here, Challender makes no allegations regarding City of Rapid City policies or customs. *See* Docket 1 at 4-9. Challender seeks both injunctive relief and money damages. *Id.* at 10. Thus, his claims against Hedrick, Parmenter, and Curry in their official capacities for money damages are

dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

### 3.   Individual Capacity Claims for Money Damages and Official Capacity Claims for Injunctive Relief

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

> Thus, each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only if he [or she] directly participated in the constitutional violation, or if his [or her] failure to train or supervise the offending actor caused the deprivation.

*Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (cleaned up). Challender's individual capacity claims must allege that each individual defendant either participated in the unconstitutional conduct or caused the conduct to occur through a failure to train or supervise the offending actor.

### a.   Claims Against Don Hedrick

Challender brings claims against Don Hedrick, the Rapid City Chief of Police, in his individual capacity for money damages and in his official capacity for injunctive relief. Docket 1 at 2. Challender alleges that Hedrick, as the "Superior Officer to Parmenter and Curry[,]" allowed their use of excessive force. *Id.* Other than this statement, he makes no allegations of fact regarding Hedrick's participation in the incident in question. *See id.* at 4-9. Hedrick is not mentioned in the included police report. *See id.* at 6-7. Challender does not

claim that Hedrick either participated in the alleged unconstitutional conduct or caused it to occur through a failure to train or supervise. *See id.* at 4-9. Thus, Challender's claims against Hedrick in his individual capacity for money damages and in his official capacity for injunctive relief are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

### b.   Fourth Amendment Claims

### (1)   Excessive Force Claims

Challender brings claims against Parmenter and Curry in their individual capacities for money damages and in their official capacities for injunctive relief for excessive force in violation of his Fourth Amendment rights. *See id.* at 2, 4-5.

The Fourth Amendment guarantees the right to be free from excessive force during an arrest. *Jackson v. Stair*, 944 F.3d 704, 709 (8th Cir. 2019) (citing *Graham v. Connor*, 490 U.S. 386, 394-95 (1989)). The United States Supreme Court "has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. "[T]he Fourth Amendment requires us to ask, from the perspective of a reasonable officer on the scene, 'whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.' " *Franklin v. Peterson*, 878 F.3d 631, 635 (8th Cir. 2017) (quoting *Graham*, 490 U.S. at 397). In *Graham*, the Supreme Court explained that a proper evaluation of the reasonableness of force used "requires

11

careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396.

Here, Challender alleges that the force used was not objectively reasonable. *See* Docket 1 at 5. He alleges that Parmenter used excessive force by tasing him "as many as [nine]" times during the arrest. *Id.* According to the included police report, Parmenter first used his taser after Challender began driving the Jeep at a high speed, dragging Parmenter with the vehicle. *Id.* at 7. Challender then attempted to run Parmenter over with the Jeep and drive away, so Parmenter continued to use his taser on Challender. *Id.* The only taser use mentioned in the report occurred while Challender was dragging Parmenter from the vehicle, attempting to strike Parmenter with the vehicle, or fleeing after having dragged and attempted to strike Parmenter. *Id.* Challender does not dispute the police report and only claims that the number of times he was tased was excessive. *See id.* at 5. Because Challender posed an immediate threat to Parmenter and was actively evading arrest and attempting to flee, Challender's taser use was objectively reasonable. *See Graham*, 490 U.S. at 396.

Challender also alleges that he was told not to move while on the ground with his hands cuffed behind his back, causing him to be unable to "breathe with ease." *Id.* at 5. "[A] citizen may prove an unreasonable seizure based on an

12

excessive use of force without necessarily showing more than *de minimis* injury
. . . .” *Chambers v. Pennycook*, 641 F.3d 898, 901 (8th Cir 2011). The Eighth
Circuit Court of Appeals has found that when a plaintiff pursues a Fourth
Amendment excessive force claim, “the necessary level of injury is actual
injury.” *Dawkins v. Graham*, 50 F.3d 532, 535 (8th Cir. 1995).

Here, Challender does not allege actual injury. *See* Docket 1 at 5. While
he claims that he was unable to breathe with ease, he does not claim that he
could not breathe at all or that he suffered harm beyond mere discomfort. *See
id.* Thus, Challender’s Fourth Amendment excessive force claims against
Parmenter and Curry in their individual capacities for money damages and in
their official capacities for injunctive relief are dismissed without prejudice
under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

### (2)     Unreasonable Search and Seizure Claim

Challender brings a claim against Parmenter and Curry in their
individual capacities for money damages and in their official capacities for
injunctive relief for unreasonable search and seizure in violation of his Fourth
Amendment rights. *Id.* at 4-5. “[A]ny traffic violation, even a minor one, gives
an officer probable cause to stop the violator. [In such a case,] the stop is
objectively reasonable and any ulterior motivation on the officer’s part is
irrelevant.” *Johnson v. Crooks*, 326 F.3d 995, 998 (8th Cir. 2003) (second
alteration in original) (quoting *Conrod v. Davis*, 120 F.3d 92, 96 (8th Cir.
1997)). “[W]henever a police officer accosts an individual and restrains his
freedom to walk away, he has ‘seized’ that person.” *Terry v. Ohio*, 392 U.S. 1,

13

16 (1968). A seizure must be reasonable, and reasonableness will depend on "a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977) (internal quotation omitted). An officer can detain someone briefly for questioning but cannot make an arrest without probable cause. *See Terry*, 392 U.S. at 26-27. Further, "[i]n the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment." *Hiibel v. Sixth Jud. Dist. Ct.*, 542 U.S. 177, 185 (2004).

Challender does not state which actions on the part of Parmenter and Curry allegedly constituted an unreasonable search and seizure. *See* Docket 1 at 4-7. Parmenter first stopped Hoftiernan's vehicle after noticing that her paper registration was expired. *Id.* at 6. The expired registration was a traffic violation that gave Parmenter probable cause to stop the vehicle under *Johnson. See* 326 F.3d at 998. Parmenter then asked Hoftiernan and Challender for identification, as allowed by *Hiibel. See* Docket 1 at 6; *see also Hiibel*, 542 U.S. at 185. After receiving information that appeared false from Challender, Parmenter then had reasonable suspicion that Challender had provided a false name to law enforcement in violation of SDCL § 22-40-1, justifying him to detain Challender further. *See* Docket 1 at 6-7.

At this point, Parmenter ordered Challender to exit the vehicle, and after Parmenter argued with Hoftiernan, Challender drove away, dragging Parmenter with him. *Id.* at 7. Once Challender was resisting arrest and actively escaping, Parmenter's further seizure of Challender was reasonable given the public

14

interest in detaining him. *See Mimms*, 434 U.S. at 109. Thus, Challender's Fourth Amendment unreasonable search and seizure claim against Parmenter and Curry in their individual capacities for money damages and in their official capacities for injunctive relief is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

### c.    Eighth Amendment Claim

Challender brings a claim against Parmenter and Curry in their individual capacities for money damages and in their official capacities for injunctive relief for cruel and unusual punishment in violation of his Eighth Amendment rights. Docket 1 at 4-5, 8-9. The Eighth Amendment is not implicated until after "a formal adjudication of guilt in accordance with due process of law." *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977). Challender makes no allegations that this incident occurred after a formal adjudication of guilt. *See* Docket 1 at 4-9. Thus, his Eighth Amendment cruel and unusual punishment claim against Parmenter and Curry in their individual capacities for money damages and in their official capacities for injunctive relief is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

### d.    Fourteenth Amendment Claims

Challender brings claims against Parmenter and Curry in their individual capacities for money damages and in their official capacities for injunctive relief for violation of his Fourteenth Amendment rights to due process and to equal protection of the laws. *Id.* at 4-5, 8-9.

### (1)     Due Process Claim

Challender alleges a violation of his Fourteenth Amendment right to due process, but he does not indicate the ways in which defendants violated this right. *See id.* at 8-9. Construing his complaint liberally, Challender brings a claim for violation of his substantive due process rights.[3] *See id.*

In order for Challender to establish a substantive due process violation, he must allege "(1) that the official violated one or more fundamental constitutional rights, and (2) that the conduct of the executive official was shocking to the contemporary conscience." *Flowers v. City of Minneapolis*, 478 F.3d 869, 873 (8th Cir. 2007) (internal quotation omitted). "[F]undamental rights are those 'deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.' " *Id.* (quoting *Terrell v. Larson*, 396 F.3d 975, 978 n.1 (8th Cir. 2005) (en banc)). "[T]he state action must be 'truly egregious and extraordinary' to shock the conscience . . . ." *Livers v. Schenck*, 700 F.3d 340, 351 (8th Cir. 2012) (quoting *Winslow v. Smith*, 696 F.3d 716, 735-36 (8th Cir. 2012)). "Whether conduct shocks the conscience is a question

---

[3] The Due Process clause of the Fourteenth Amendment also protects pretrial detainees from excessive force before a formal adjudication of guilt but following a lawful commitment to pretrial detention. *Ingraham*, 430 U.S. at 671 n.40; *see also Bell v. Wolfish*, 441 U.S. 520, 535-37 (1979). Challender makes no allegation that he had been lawfully committed to pretrial detention at the time of the incident in question. *See* Docket 1 at 4-9. To the extent that Challender brings a due process claim against Parmenter and Curry in their individual capacities and in their official capacities for injunctive relief for excessive force, this claim is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

of law." *Folkerts v. City of Waverly*, 707 F.3d 975, 980 (8th Cir. 2013) (citing

*Terrell*, 396 F.3d at 981).

> Because a wide variety of official conduct may cause injury, a court must first determine the level of culpability the § 1983 plaintiff must prove to establish that the defendant's conduct may be conscience shocking. Mere negligence is never sufficient. Proof of intent to harm is usually required, but in some cases, proof of deliberate indifference, an intermediate level of culpability, will satisfy this substantive due process threshold. The deliberate indifference standard is sensibly employed only when actual deliberation is practical. By contrast, the intent-to-harm standard most clearly applies in rapidly evolving, fluid, and dangerous situations which preclude the luxury of calm and reflective deliberation.

*Id.* at 980-81 (cleaned up).

Challender fails to allege sufficient facts to state a claim for violation of

his substantive due process rights. *See* Docket 1 at 4-9. The incident in

question was a "rapidly evolving, fluid, and dangerous situation[]" such that a

showing of proof of intent to harm is required under *Folkerts*. 707 F.3d at 981

(quoting *Terrell*, 396 F.3d at 978). The only evidence of intent offered by

Challender is an allegation that Parmenter said, "I'm [F*****g] tired of this

guy[,]" at some point during or following the arrest. *See* Docket 1 at 5. Although

this indicates frustration on the part of Parmenter, it does not indicate any

intent by Parmenter to harm Challender. Thus, Challender's Fourteenth

Amendment due process claim against Parmenter and Curry in their individual

capacities for money damages and in their official capacities for injunctive relief

is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and

1915A(b)(l).

17

### (2)   Equal Protection Claim

Challender alleges a violation of his Fourteenth Amendment right to equal protection of the laws. Docket 1 at 4-5, 8-9. "The Equal Protection Clause generally requires the government to treat similarly situated people alike." *Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994) (citing *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)). A plaintiff must first show that he was treated "differently than others who were similarly situated to [him]." *Id.* "Dissimilar treatment of dissimilarly situated persons does not violate equal protection." *Id.*

An equal protection violation also requires "an intent to discriminate." *In re Kemp*, 894 F.3d 900, 910 (8th Cir. 2018); *see also Henley v. Brown*, 686 F.3d 634, 642 (8th Cir. 2012) ("In the absence of any allegations of intentional discrimination, we therefore concluded the Equal Protection Clause did not provide a ground for relief for appellant's section 1983 race discrimination claim." (citing *Foster v. Wyrick*, 823 F.2d 218, 221 (8th Cir. 1987))). An equal protection claim has been recognized through a "class of one" claim, where a "plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Here, Challender makes no allegations that he was treated differently than others similarly situated to him. *See* Docket 1 at 4-9. In fact, the only other person involved in this incident is Hoftiernan, who was not similarly situated to Challender because she did not attempt to flee in a vehicle. *See id.*

at 6-7. Thus, Challender has not stated a claim for an equal protection violation. He also has not stated a "class of one" claim because he has not shown any intentionally different treatment. *See Village of Willowbrook*, 528 U.S. at 564. Challender's Fourteenth Amendment equal protection claim against Parmenter and Curry in their individual capacities and in their official capacities for injunctive relief is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

### e.    Vindictive Prosecution Claim

Challender brings a claim for vindictive prosecution against Parmenter in his individual capacity and in his official capacity for injunctive relief. Docket 1 at 2, 5. The Eighth Circuit has recognized vindictive prosecution as grounds to dismiss a criminal indictment. *United States v. Stroud*, 673 F.3d 854, 859 (8th Cir. 2012). "Although the government may take action to punish a defendant for committing a crime, punishing a defendant for exercising his valid legal rights is impermissible prosecutorial vindictiveness." *Id.* (quoting *United States v. Campbell*, 410 F.3d 456, 461 (8th Cir. 2005)). The defendant has a heavy burden to show prosecutorial vindictiveness "in light of the discretion prosecutors are given in performing their duties." *Id.* (citing *United States v. Leathers*, 354 F.3d 955, 961 (8th Cir. 2004)).

Challender fails to state a claim for vindictive prosecution. Challender makes no allegations that Parmenter sought to punish him for exercising his valid legal rights. *See* Docket 1 at 5. Challender's only allegation is that Parmenter expressed his frustration with Challender at some point during or

19

after the arrest. *Id.* Further, although a claim of vindictive prosecution is grounds to dismiss a criminal indictment, Challender makes no argument that it is grounds for a § 1983 claim. *See id.* at 4-9.

A § 1983 plaintiff can bring a First Amendment retaliation claim, but he must "show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Spencer v. Jackson County*, 738 F.3d 907, 911 (8th Cir. 2013) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)). Challender makes no showing that he engaged in a protected activity or that Parmenter's actions were motivated by Challender's exercise of the protected activity. *See* Docket 1 at 4-9. Thus, Challender's claim for vindictive prosecution against Parmenter in his individual capacity and in his official capacity for injunctive relief is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

### D.    Strike Under 28 U.S.C. § 1915(g)

The court finds that Challender's complaint fails to state a claim upon which relief may be granted. Section 1915(g) states as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). Because Challender's complaint is dismissed for failure to state a claim upon which relief may be granted, this dismissal will count as a strike.

Thus, it is ORDERED:

1. That Challender's motion for leave to proceed in forma pauperis (Docket 2) is granted.

2. That the institution having custody of Challender is directed that whenever the amount in Challender's trust account, exclusive of funds available to him in his frozen account, exceeds $10.00, monthly payments that equal 20 percent of the funds credited the preceding month to Challender's trust account shall be forwarded to the U.S. District Court Clerk's Office under to 28 U.S.C. § 1915(b)(1), until the $350 filing fee is paid.

3. That Challender's complaint (Docket 1) is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

4. That this action constitutes a strike against Challender for purposes of the three-strikes rule under 28 U.S.C. § 1915(g).

5. That judgment is entered in favor of the Jason Parmenter, Rachel Curry, Don Hedrick, the City of Rapid City, and against Challender.

6.     That Challender's motion for appointment of counsel (Docket 5) is

denied as moot.

Dated June 1, 2022.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE